**FILED**

Dec 30, 2024

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

1

2

3

4

UMHOFER, MITCHELL & KING LLP
Matthew D. Umhofer (SBN: 206607)
 Email: Matthew@umklaw.com
767 S. Alameda St., Suite 270
Los Angeles, CA 90021
Telephone: (213) 394-7979
Facsimile: (213) 529-1027

# SEALED

5

Attorneys for *Qui Tam* Plaintiff Daniel P. Lopez

6

7

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

8

9

10

11

12

UNITED STATES OF AMERICA
and STATE OF CALIFORNIA, ex
rel. DANIEL P. LOPEZ, M.D.

Plaintiffs,

v.

13

14

15

16

17

18

CLINICA SIERRA VISTA, an
entity; PERMANENTE MEDICAL
GROUP, INC., an entity;
BAKERSFIELD MEMORIAL
HOSPITAL, an entity; DIGNITY
HEALTH, an entity; OLGA
MEAVE, M.D., an individual;
IRVING AYALA-RODRIGUEZ,
M.D., an individual; and DOES 1
through 10 inclusive,

Defendants.

19

20

21

22

23

24

25

26

27

28

**Case No.:**  1:24-cv-01596-KES-CDB

**COMPLAINT FOR VIOLATION
OF FEDERAL AND STATE FALSE
CLAIMS ACT, AND FOR
UNLAWFUL RETALIATION**

1.  **Violations of the FCA**
2.  **Violations of the California FCA**
3.  **Whistleblower Retaliation (FCA)**
4.  **Whistleblower Retaliation (CA FCA)**
5.  **Retaliation (Labor Code § 1102.5)**
6.  **Retaliation (Labor Code § 98.6)**
7.  **Retaliation (EMTALA)**
8.  **Retaliation (FEHA)**
9.  **Discrimination (FEHA)**
10. **Failure to Make Reasonable
    Accommodations (FEHA)**
11. **Failure to Engage in the Interactive
    Process (FEHA)**
12. **Failure to Prevent Discrimination or
    Retaliation**
13. **Violation of CFRA**
14. **Wrongful Termination (Public
    Policy)**

**JURY TRIAL DEMANDED**

**FILED IN CAMERA AND UNDER
SEAL PURSUANT TO 31 U.S.C. §
3730(b)(2)**

*COMPLAINT FOR VIOLATION OF FEDERAL AND STATE FALSE CLAIMS ACT,
AND FOR UNLAWFUL RETALIATION AND DISCRIMINATION*

Relator-Plaintiff DANIEL P. LOPEZ, M.D., F.A.C.O.G. (hereinafter referred to as "Relator-Plaintiff" or "LOPEZ") through his undersigned attorneys, on behalf of the United States of America ("United States") and the State of California, files this Complaint against Defendants Clinica Sierra Vista ("CSV"), Permanente Medical Group, Inc. ("PERMANENTE"), Bakersfield Memorial Hospital ("BAKERSFIELD"), Dignity Health (DIGNITY), Olga Meave, M.D. ("DR. MEAVE"), and Irving Ayala-Rodriguez, M.D., AAHIVS ("DR. AYALA-RODRIGUEZ") (collectively, "DEFENDANTS")[1], and alleges as follows:

## **INTRODUCTION**

1.    Relator Daniel P. Lopez, M.D., repeatedly raised concerns about violations of the for Emergency Medical Treatment & Labor Act (EMTALA) involving his employer, Clinica Sierra Vista ("CSV"), as well as Bakersfield Memorial Hospital, and Dignity Health. He was fired in retaliation for raising those concerns.

2.    Specifically, Dr. Lopez reported to his superiors that CSV, Bakersfield Memorial Hospital, and Dignity Health, had failed to comply with EMTALA's requirement to (1) to have on-call obstetricians or other qualified providers available to treat women who are in active labor or who present to the Emergency Department with gynecologic emergencies; and (2) to have a backup plan in case such on-call physicians become unavailable through circumstances beyond their control.

3.    The failure of the defendants to comply with EMTALA was no mere foot-fault—defendants regularly and falsely certified compliance with EMTALA in submitting claims to Medicare and Medi-Cal. Those claims—for millions of dollars—violated the federal False Claims Act and the California False Claims Act.

---

[1] At times, Defendants Clinica Sierra Vista, Olga Meave, M.D., and Irving Ayala-Rodriguez, M.D. will be referred to collectively as the "CSV Defendants."

*COMPLAINT FOR VIOLATION OF FEDERAL AND STATE FALSE CLAIMS ACT, AND FOR UNLAWFUL RETALIATION AND DISCRIMINATION*

## NATURE OF THE ACTION

4.    The defendants knowingly or with reckless intent made and presented to the United States of America (the "Government") false claims in violation of the Federal Civil False Claims Act, 31 U.S.C. §§ 3729, *et. seq*. ("FCA"). The violations of the FCA involve claims for reimbursement from Medicare and Medi-Cal presented to the Government from July 2021 (and possibly earlier) through the present.

5.    CSV, Bakersfield Memorial, and Dignity Health opted into *The Emergency Medical Treatment and Active Labor Act* ("EMTALA"), 42 U.S.C. § 1395dd, as a condition of receiving payments from Medicare and Medicaid. As explained in detail below, the defendants engaged in a systematic and fraudulent practice of claiming compliance with EMTALA while submitting claims to the Medicare and Medicaid reimbursement programs during the relevant time frames. Each claim (totaling millions of dollars per year) has been false and fraudulent in that each carried with it a false certification that satisfied the regulatory conditions for payment, i.e., that the defendants' emergency departments were fully compliant with the requirements of EMTALA. Each claim falsely presented is a separate "false claim" subjecting defendants to criminal sanctions, 42 U.S.C. § 1320a-7b, and civil fines, 42 U.S.C. § 1320a-7a; and, 42 U.S.C. § 1395dd.

6.    In order to receive payments under the Medicare and Medicaid programs, a hospital must meet the requirements established under Title XVIII of *The Social Security Act*, 14 U.S.C. § 1395, *et seq.*, commonly known as *The Medicare Act*, as well as the regulations established by the Secretary of Health and Human Services. During the time frame at issue, CSV, Bakersfield Memorial, and Dignity Health falsely certified compliance with EMTALA, such violations being commonly known as "patient dumping." Compliance with the requirements of EMTALA is a condition for payment under the Medicare and Medicaid reimbursement programs. 42 U.S.C. § 1395cc (a)(1)(I)(I).

*COMPLAINT FOR VIOLATION OF FEDERAL AND STATE FALSE CLAIMS ACT, AND FOR UNLAWFUL RETALIATION AND DISCRIMINATION*

7.    Congress enacted EMTALA out of concern that, due to economic constraints, hospitals were abandoning the traditional practice of providing emergency care to all comers. Instead, hospitals were refusing to treat certain indigent patients, and/or transferring such patients to other institutions.

8.    During the time frame at issue, CSV, Bakersfield Memorial, and Dignity Health failed to comply with EMTALA's requirements (1) to have on-call providers available to treat patients who present to the Emergency Department with emergencies; and (2) to have a backup plan in case such on-call physicians become unavailable through circumstances beyond their control (e.g., illness, transportation issues, etc.).

9.    Defendants intentionally and purposely hid their EMTALA violations from various investigating administrative agencies.

10.    Defendants' purpose was to hide their non-compliance in order to allow the continued submission of false claims for payment under the Medicare and Medicaid reimbursement programs. Their additional purpose was to falsely and fraudulently avoid payment of required FCA and EMTALA violation fines. 42 U.S.C. § 1320a-7a(a); and, 42 U.S.C. § 1395dd(d)(1)(A). During the time frame at issue, each claim submitted to the Medicare and Medicaid reimbursement programs and each fine falsely avoided is a separate "false claim" subjecting CSV to criminal sanctions pursuant to 42 U.S.C. § 1320a-7b; and civil fines pursuant to 42 U.S.C. § 1320a-7a, and 42 U.S.C. 1395dd.

11.    Defendants' purpose was and is to falsely and fraudulently avoid payment of fines and falsely and fraudulently obtain Medicare and Medicaid program payments.

12.    Each false claim submitted is recoverable under the False Claims Act. Each fine and/or payment falsely and fraudulently avoided is recoverable under the False Claims Act.

## JURISDICTION AND VENUE

13.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction). This Court also has exclusive

3

jurisdiction pursuant to 31 U.S.C. §§ 3730(b), 3730(h), 3732(a), and 3732(b) which confer jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§ 3729 and 3730. Title 31 U.S.C. § 3732 provides: "Any action under Section 3730 may be brought in any judicial district in which the defendant or, in the case of multiple defendants, any one defendant can be found, resides, transacts business, or in which any act prescribed by Section 3729 occurred. A summons as required by the Federal Rules Civil Procedure shall be issued by the appropriate district court and served at any place within or outside the United States." This Court also has jurisdiction pursuant to 42 U.S.C. § 1395dd(i).

14.     Venue in this Court is proper because this is an action brought against individuals and entities that do business in this district.

## THE PARTIES

15.     Relator-Plaintiff Daniel P. Lopez – Dr. Lopez M.D., F.A.C.O.G., is a citizen of the United States and was at all relevant times mentioned herein, an adult resident citizen of Chatsworth, California. He was employed by CSV, and regularly worked at Bakersfield Memorial, which is operated by Dignity. Dr. Lopez seeks recovery under the False Claims Act individually and on behalf of the United States Government. 31 U.S.C. § 3730(b).

16.     Defendant Clinical Sierra Vista ("CSV") at all relevant times mentioned herein, is a nonprofit healthcare organization doing business in Kern and Fresno Counties, California, and was an employer or joint employer of Relator-Plaintiff. CSV is one of the largest federally qualified health centers in California and in the United States. It receives the Department of Health and Human Services ("HHS") funding and has Federal Public Health Service ("PHS") deemed status with respect to certain health or health-related claims, including medical malpractice claims, for itself and its covered individuals. The Women's Health Department providers at CSV consisted of seven providers that had the responsibility of caring for pregnant patients that were to

*COMPLAINT FOR VIOLATION OF FEDERAL AND STATE FALSE CLAIMS ACT, AND FOR UNLAWFUL RETALIATION AND DISCRIMINATION*

be delivered at Bakersfield Memorial Hospital (along with nine different clinic sites throughout Kern County).

17. Defendant Bakersfield Memorial Hospital is a non-profit hospital located within the city of Bakersfield, California. It is operated by Dignity Health.

18. Defendant Dignity Health, Inc., is registered as a 501(c)(3) tax-exempt nonprofit corporation headquartered in San Francisco, California. According to its website, Dignity is one of the largest health systems in the nation and the largest hospital provider in the state. It operates over 30 hospitals, one of which is Bakersfield Memorial.

19. Defendant Olga Meave, M.D., is an individual residing in California and at all relevant times was the chief executive officer of defendant CSV. She was Dr. Lopez's superior at CSV.

20. Irving Ayala-Rodriguez, M.D., is an individual residing in California and at all relevant times was the chief medical officer of defendant CSV, and was Dr. Lopez's superior at CSV.

21. Plaintiff is informed and believes, and thereby alleges that each of the Defendants herein was at all times relevant hereto the agent or representative of the remaining Defendants and was acting at least in part, within the course and scope of such relationship in doing the things herein alleged.

22. Plaintiff is informed and believes, and thereby alleges that each of the Defendants was acting in a single or joint employer, agency, employer, and/or alter ego capacity such that they are liable for the acts of their agents and/or employees.

23. The agents and/or employees of the Defendants and each of them acting on behalf of the Defendants acted within the course and scope of her, his or its authority as the agent, servant and/or employee of the Defendants, and personally participated in the conduct alleged herein on behalf of the Defendants.

24. The acts of each Defendant are legally attributable to the other Defendants, and all Defendants are jointly and severally liable to Plaintiff for the loss

5

*COMPLAINT FOR VIOLATION OF FEDERAL AND STATE FALSE CLAIMS ACT, AND FOR UNLAWFUL RETALIATION AND DISCRIMINATION*

sustained as a proximate result of the conduct of each Defendant's agents and/or employees.

## COMPLIANCE WITH THE FALSE CLAIMS ACT

25.    Concurrent with the filing this complaint, evidentiary disclosures required by the False Claims Act are being served on the United States Attorney for the Eastern District of California - Civil Division, 31 U.S.C. § 3730(b)(2), and on the Attorney General for the State of California - Office of Civil Litigation, 31 U.S.C. § 3732(c).

26.    Dr. Lopez personally observed and experienced the defendants' violations of EMTALA during his employment at CSV. His knowledge of the violations is therefore "direct" and "independent," and he qualifies as an "original source" as defined by the False Claims Act.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

27.    On August 2, 2024, Plaintiff timely filed a complaint of discrimination with the California Civil Rights Department ("CCRD") against Defendants. The CCRD issued an immediate right-to-sue notice to Plaintiff, which was subsequently and timely served on such Defendants. Plaintiff has timely exhausted all administrative remedies required to commence this action.

## FACTS

28.    Dr. Lopez is a board-certified Obstetrician-Gynecologist with over 30 years of experience, including as a clinician, laborist, and gynecologic surgeon. He received his medical degree from UCLA School of Medicine and completed his specialty residency at UCLA Medical Center, Department of Obstetrics and Gynecology.

29.    Dr. Lopez is Fellow of the American College of Obstetricians and Gynecologists, the International Association of Obstetricians and Gynecologists, and the California Medical Association.

30.    Dr. Lopez was listed in the 2011 edition of The Leading Physicians of the World and was selected as one of America's Top Obstetricians and Gynecologists.

6

31.    Dr. Lopez has devoted the latter part of his career to serving indigent farm workers in central California, and approximately 95% of Dr. Lopez' patient population at Defendants' OB-GYN department were Hispanic women, most of whom were undocumented and spoke only Spanish.

32.    Dr. Lopez was employed by CSV from July 5, 2021 through his termination on February 6, 2024.

33.    As part of his employment at CSV, Dr. Lopez worked at Bakersfield Memorial Hospital, where he had privileges to provide OB-GYN services.

34.    Dr. Lopez was one of two OB-GYN providers who spoke Spanish, out of the seven employed by Defendants, when he was terminated.

35.    In December 2022, Dr. Lopez experienced symptoms consistent with a heart attack while performing a cesarean section during a 24-hour shift. That experience made Dr. Lopez realize that was nobody who could take over if he were unable to continue the procedure.

36.    Despite needing medical attention, Dr. Lopez had no backup provider available and had to continue working to ensure patient safety. If Dr. Lopez had not continued, the patients, some of whom were high-risk, would have been left under the care of nurses who were not adequately trained to handle labor and delivery emergencies.

37.    In February of 2023, Dr. Lopez suffered a severe myocardial infarction, which required emergency surgery.

38.    Dr. Lopez requested and took medical leave under the California Family Rights Act ("CFRA") and the Family and Medical Leave Act ("FMLA") to care for his medical condition.

39.    The heart attacks that Dr. Lopez experienced led him to question the impact that Defendants' practices were having on patient safety.

40.    Under the Emergency Medical Treatment and Labor Act (EMTALA), hospitals are required to provide emergency care for pregnant women in labor and

*COMPLAINT FOR VIOLATION OF FEDERAL AND STATE FALSE CLAIMS ACT, AND FOR UNLAWFUL RETALIATION AND DISCRIMINATION*

patients with gynecological emergencies. EMTALA requires hospitals (1) to have on-call obstetricians or other qualified providers available to treat women who are in active labor or who present to the Emergency Department with gynecologic emergencies; and (2) to have a backup plan in case such on-call physicians become unavailable through circumstances beyond their control (e.g., illness, transportation issues, etc.).

41.    Despite this requirement, Defendants failed to implement adequate backup for OB-GYN providers during 24-hour shifts, which placed patients at risk of serious harm or death.

42.    At Bakersfield Memorial Hospital, there was generally only one OB-GYN provider responsible for the care of CSV patients during a 24-hour shift.

43.    Dr. Lopez saw that were no plans to provide a backup OB-GYN. In addition, he saw that there was no back plan in the event the on-call physician was incapable of caring for patients. When Dr. Lopez asked management who was his backup in the event that he was unable to respond, he was told that there was no backup provider and that there was no backup plan.

44.    Dr. Lopez began to research what could be done to protect patients from serious harm and even death due to lack of adequate provider coverage during OB-GYN on-duty obligations in Labor and Delivery.

45.    On or around August 11, 2023, Dr. Lopez met defendant Dr. Meade, the Chief Executive Officer of CSV, and discussed with her that the department had been violating EMTALA laws while on 24-hour call on Labor and Delivery since he was hired. He told her that he had records of all the Labor and Delivery on-call schedules for the last four years, and noted that was no scheduled backup provider, and no backup plan if the provider was unavailable or unable to take care of a laboring patient or a gynecological or inpatient emergency.

46.    Dr. Lopez also discovered that the credentialing application for the Labor and Delivery department was fraudulent. It listed multiple people who were not

*COMPLAINT FOR VIOLATION OF FEDERAL AND STATE FALSE CLAIMS ACT, AND FOR UNLAWFUL RETALIATION AND DISCRIMINATION*

actually available as backup physicians for Labor and Delivery. Defendants were aware that the credentialing application was false and fraudulent.

47.    Dr. Lopez reiterated to CSV superiors—including Dr. Meade and Dr. Ayala- Rodriguez—his requests to ensure proper backup coverage for OB-GYN providers under EMTALA on multiple occasions. Dr. Lopez also submitted a reasonable accommodation request asking for a backup OB-GYN during 24-hour shifts.

48.    Despite multiple meetings with Defendants' administration, including the Chief Medical Officer, Chief Executive Officer, and Human Resources, no action was taken to provide backup coverage.

49.    Instead of addressing the situation, Defendants started to retaliate against Dr. Lopez. Defendants threatened to make Plaintiff travel to different clinics, and to make him move from the clinic where he had worked for approximately two years (and where he had built a patient base and relationships with patients and medical personnel). Defendants provided Plaintiff with his clinic schedules late, while, upon information and belief, other providers were provided with schedules months ahead of time. Defendants also took away Plaintiff's surgery privileges. In doing so, Defendants' actions not only reduced Plaintiff's income, but also disrupted continuity of care.

50.    Defendants wanted Dr. Lopez to do 24-hour calls/shifts without backup, and Dr. Lopez continued to request a backup in order to ensure compliance with EMTALA and in the interests of patient safety, and as an accommodation for his circumstances.

51.    Dr. Lopez' accommodation request was ultimately approved by Defendants' human resources department in December 2023, but the Chief of the OB-GYN department informed Dr. Lopez there was still no backup. Dr. Lopez was given notice of his termination just a few days later on December 28, 2023. Defendants indicated that his termination would be effective on February 26, 2024.

*COMPLAINT FOR VIOLATION OF FEDERAL AND STATE FALSE CLAIMS ACT, AND FOR UNLAWFUL RETALIATION AND DISCRIMINATION*

52.    Prior to his termination, Dr. Lopez raised concerns about EMTALA violations with Defendants' administration and documented numerous instances where patient safety was jeopardized due to the lack of backup as required by EMTALA. Defendants continued to require Dr. Lopez to perform both elective and emergency procedures during 24-hour shifts without any backup, placing Dr. Lopez and his patients at risk.

## FEDERAL AND STATE PROGRAMS HARMED

53.    The Department of Health and Human Services ("HHS"), through the Center for Medicare and Medicaid Services ("CMS") funds and administers the Medicare program, which is a system of healthcare insurance for the aged and disabled created under Title XVIII of *The Social Security Act*, 42 U.S.C. § 1395, *et. seq.*

54.    In 1965, pursuant to Title XIX of *The Social Security Act*, 42 U.S.C. § 1396 et seq., Medicaid was established as a joint federal and state program to provide financial assistance for medical care to individuals with low incomes. Through CMS, HHS provides funds for the State of California's Medicaid program which is funded in part from federal funds and in part from the state where the facility is located. 42 U.S.C. §§ 1396, *et. seq.*

55.    Under Medicaid, each state establishes its own eligibility standards, benefit packages, payment rates and program administration in accordance with certain federal statutory and regulatory requirements. The state pays the health care providers for services rendered to Medicaid recipients, with the state obtaining the federal share of the Medicaid payment from accounts that draw on the United States Treasury. 42 C.F.R. §§ 430.0, *et seq*. Therefore, the FCA reaches all false claims submitted to State administered Medicaid programs.

56.    EMTALA was enacted by Congress in 1986 as part of *The Consolidated Omnibus Budget Reconciliation Act* ("COBRA"). 42 U.S.C. §1395dd. Referred to as the "Anti-Dumping Law."

57.    After its enactment, EMTALA became the *de facto* National Health Care Policy for the uninsured seeking emergency medical treatment or trauma care.

58.    During the relevant time frame, Bakersfield Memorial as a participating hospital agreed to meet the requirements of EMTALA.

59.    In order to receive payments under the Medicare and Medicaid reimbursement programs, participating hospitals as providers of service are obligated to file certain agreements and certifications with the Secretary of HHS. 42 U.S.C. §1395cc.

60.    In the case of a hospital or critical access hospital, such hospital, as a condition for payment, must adopt and enforce a policy to ensure compliance with the requirements of EMTALA, and meet the requirements of EMTALA. 42 U.S.C. §1395cc(a)(1)(I)(I).

61.    Bakersfield Memorial and its operator Dignity Health as a participating hospital agreed to adopt and enforce a policy to ensure compliance with the requirements of EMTALA, and meet the requirements of EMTALA, as a condition for payment under the Medicare and Medicaid reimbursement programs.

62.    Annual agreements and/or patient specific certifications were made by Bakersfield Memorial and its operator Dignity Health during the relevant time frame. In such agreements/certifications, Bakersfield Memorial and its operator Dignity Health knowingly, intentionally, and falsely concealed Bakersfield Memorial's non-compliance with EMTALA and certain other state regulations, as described more fully herein.

63.    Bakersfield Memorial and its operator Dignity Health must, with respect to each patient who is a beneficiary of a Medicare or Medicaid program, submit a claim reimbursement form, Form UB-04 a/k/a Form CMS-1450. On each form (totaling many thousands per year during the relevant time frames), Bakersfield Memorial and its operator Dignity Health expressly certified: "...payment and satisfaction of this claim will be made from Federal and State funds, any false claims, statements,

*COMPLAINT FOR VIOLATION OF FEDERAL AND STATE FALSE CLAIMS ACT, AND FOR UNLAWFUL RETALIATION AND DISCRIMINATION*

documents, or concealment of any material fact, may be prosecuted under applicable Federal or State laws." Form UB-04 (Form CMS-1450).

64. Certifications were made by transferring physicians and/or other qualified medical personnel at Bakersfield Memorial and its operator Dignity Health during the relevant time frames with respect to each transferred patient for which Bakersfield Memorial and its operator Dignity Health submitted a Medicare or Medicaid program claim reimbursement form, including, but not limited to, patients whose treatment violated the requirements of EMTALA.

65. The Government, acting through its relevant agencies (HHS, CMS) had a right to rely, and did rely, upon the representations and statements made by Bakersfield Memorial and its operator Dignity Health in connection with claims submitted for reimbursement during the relevant time frames, including the certification that Bakersfield Memorial had and was providing healthcare services under circumstances satisfying all of Medicare and Medicaid's conditions of payment, including EMTALA.

66. Certification of compliance with EMTALA and compliance with EMTALA is a material and essential condition for payment under the Medicare and Medicaid programs. A false certification of compliance with EMTALA and/or a failure to comply with EMTALA, coupled with the knowing submission of a claim for reimbursement for services that were rendered when Bakersfield Memorial and its operator Dignity Health was not in compliance with EMTALA, constitutes a false and fraudulent claim under 31 U.S.C. §§ 3729, *et. seq.*

67. EMTALA and related federal law and regulations provide as follows:

a. Hospitals or critical access hospitals must file with the Secretary of Health and Human Service an agreement "to maintain a list of physicians who are on call for duty after the initial examination to provide treatment necessary to stabilize an individual with an emergency medical condition." Social Security Act, Section 1866(a)(1)(I)(iii). Further:

*COMPLAINT FOR VIOLATION OF FEDERAL AND STATE FALSE CLAIMS ACT, AND FOR UNLAWFUL RETALIATION AND DISCRIMINATION*

Any provider of services (except a fund designated for purposes of section 1814(g) and section 1835(e)) shall be qualified to participate under this title and shall be eligible for payments under this title if it files with the Secretary an agreement—

(I) in the case of a hospital or critical access hospital—

(i) to adopt and enforce a policy to ensure compliance with the requirements of section 1867 and to meet the requirements of such section,

(ii) to maintain medical and other records related to individuals transferred to or from the hospital for a period of five years from the date of the transfer, and

(iii) to maintain a list of physicians who are on call for duty after the initial examination to provide treatment necessary to stabilize an individual with an emergency medical condition.

b.  Emergency medical condition includes pregnant women who are in labor (having contractions if transferring such patients to another hospital poses a danger to the safety of the mother or unborn child). Social Security Act, Section 1867.

c.  The Code of Federal Regulations states:

i.  Hospitals are required to maintain: "[a]n on-call list of physicians who are on the hospital's medical staff or who have privileges at the hospital, or who are on the staff or have privileges at another hospital participating in a formal community call plan, in accordance with § 489.24(j)(2)(iii), available to provide treatment necessary after the initial examination to stabilize individuals with emergency medical conditions who are receiving services required under § 489.24 in accordance with the resources available to the hospital." 42 CFR §489.20(r)(2).

*COMPLAINT FOR VIOLATION OF FEDERAL AND STATE FALSE CLAIMS ACT, AND FOR UNLAWFUL RETALIATION AND DISCRIMINATION*

ii. Concerning the availability of on-call physicians,

In accordance with the on-call list requirements specified in § 489.20(r)(2), a hospital must have written policies and procedures in place

(1) To respond to situations in which a particular specialty is not available or the on-call physician cannot respond because of circumstances beyond the physician's control; and

(2) To provide that emergency services are available to meet the needs of individuals with emergency medical conditions if a hospital elects to

(i) Permit on-call physicians to schedule elective surgery during the time that they are on call;

(ii) Permit on-call physicians to have simultaneous on-call duties; and

(iii) Participate in a formal community call plan. Notwithstanding participation in a community call plan, hospitals are still required to perform medical screening examinations on individuals who present seeking treatment and to conduct appropriate transfers …

42 CFR §489.24(j).

d. In addition, CMS has instructed that

"[a] hospital must have written on-call policies and procedures and must clearly define the responsibilities of the on-call physician to respond, examine and treat patients with an EMC. Among other things, the policies and procedures must address the steps to be taken if a particular specialty is not available or the on-call physician cannot respond due to circumstances

14

*COMPLAINT FOR VIOLATION OF FEDERAL AND STATE FALSE CLAIMS ACT, AND FOR UNLAWFUL RETALIATION AND DISCRIMINATION*

beyond his/her control (e.g., transportation failures, personal illness, etc.). The policies and procedures must also ensure that the hospital provides emergency services that meet the needs of an individual with an EMC if the hospital chooses to employ any of the on-call options permitted under the regulations, i.e., community call, simultaneous call, or elective procedures while on-call. In other words, there must be a back-up plan to these optional arrangements. For instance, some hospitals may employ the use of "jeopardy" or back-up call schedules to be used only under extreme circumstances. The hospital must be able to demonstrate that hospital staff is aware of and able to execute the back-up procedures."

CMS Guidance (State Operations Manual, Appendix V – Interpretive Guidelines – Responsibilities of Medicare Participating Hospitals in Emergency Cases (Rev. 191, 07-19-19))

68.     Bakersfield Memorial and its operator Dignity Health violated the above provisions by certifying compliance with EMTALA and then submitting false and fraudulent claims seeking reimbursement from Medicare and Medicaid for services rendered despite the fact that it had not complied with the above provisions. Specifically, Bakersfield Memorial and its operator Dignity Health did not have on-call obstetricians or other qualified providers available to treat women who were in active labor or who presented to the Emergency Department with gynecologic emergencies; and did not have a backup plan in case such on-call physicians become unavailable through circumstances beyond their control.

69.     A facility that discovers or is made aware of material errors or omissions in claims submitted for reimbursement to Medicare and Medicaid is required to disclose those matters to the government. Facilities are not free to keep money that results from such errors, or to conceal such errors, or to retaliate against those who

*COMPLAINT FOR VIOLATION OF FEDERAL AND STATE FALSE CLAIMS ACT, AND FOR UNLAWFUL RETALIATION AND DISCRIMINATION*

endeavored to correct them, e.g., Dr. Lopez. Title 42 of the United States Code, Section 1320(a)-7(b)(a)(3) creates a duty to disclose such errors by making a failure to disclose a felony, as follows:

> Whoever . . . having knowledge of the occurrence of any event effecting (A) his initial or continued right to any such benefit or payment . . . conceals or failed to disclose such event with an intent fraudulently to secure such benefit or payment either in a greater amount or quantity that is due or when no such benefit or payment is authorized . . . shall (i) in the case of such statement, representation, concealment, failure . . . be guilty of a felony.

Accordingly, Bakersfield Memorial and its operator Dignity Health had and continue to have an affirmative duty to disclose material information which indicates their reimbursement claims are inaccurate.

70.     In order for Bakersfield Memorial to be eligible for payments under the Medicare and Medicaid programs, Bakersfield Memorial and its operator Dignity Health had to file with HHS an agreement "to adopt and enforce a policy to ensure compliance with the requirements" of EMTALA. 42 U.S.C. § 1395cc(a)(1)(I)(i). Bakersfield Memorial and its operator Dignity Health knew that actual compliance with EMTALA, certification of compliance with EMTALA, **and** reporting suspected EMTALA violations were material to the Government's payment position, so much so that CMS had the authority to terminate Bakersfield Memorial's provider agreement. 42 C.F.R. § 489.24(g).; 42 C.F.R. § 489.20(m), (q), and ( r); 42 C.F.R. § 489.53(b)(1)(A), and, (b)(2).

71.     At all relevant times, CSV and Defendants Dr. Meade and Dr. Ayala-Rodriguez—as the CEO and COO, respectively, of CSV—were aware that Bakersfield Memorial and its operator Dignity Health were violating EMTALA's requirements. They also knew that the claims Bakersfield Memorial and its operator Dignity Health

*COMPLAINT FOR VIOLATION OF FEDERAL AND STATE FALSE CLAIMS ACT, AND FOR UNLAWFUL RETALIATION AND DISCRIMINATION*

submitted for were false because Bakersfield Memorial was not complying with EMTALA.

72.    CSV—with the knowledge and participation of Dr. Meade and Dr. Ayala-Rodriguez—also submitted false claims to Medicare and Medi-Cal for services provided by Dr. Lopez at Bakersfield Memorial, knowing that Bakersfield Memorial was not in compliance with EMTALA.

## MEDICARE AND MEDICAID

### *Medicare*

73.    Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.* establishes the Health Insurance for the Aged and Disabled Program, more popularly known as the Medicare program. Medicare is a federally operated and funded program. It is administered by the Secretary of Health and Human Services ("HHS") through the Centers for Medicare and Medicaid Services ("CMS"), a department of HHS.

74.    The Medicare program is comprised of four parts, Parts A, B, C, and D. Medicare Part A ("Part A"), the Basic Plan of Hospital Insurance, covers the cost of inpatient hospital services and post-hospital nursing facility care. Medicare Part B, the Voluntary Supplemental Insurance Plan, covers the cost of services performed by physicians and certain other health care providers, both inpatient and outpatient, if the services are medically necessary and directly and personally provided by the provider. Medicare Part C covers certain managed care plans, and Medicare Part D provides subsidized prescription drug coverage for Medicare beneficiaries.

75.    To participate in Medicare, providers must certify that their services are provided economically and only when, and to the extent medically required, or that the services are "reasonable and necessary," as required by statute. 21 U.S.C. § 1395n; 42 U.S.C. § 1395y(a)(l)(A).

76.    A service is expressly excluded from coverage if it is "not reasonable and necessary" for "the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." 42 C.F.R. § 41 l.15(k)(l). In other words,

it is an express condition of payment that the treatment sought under Medicare must be medically necessary. Id.; 42 C.F.R. § 411.15 (delineating "[p]articular services excluded from coverage"); id. at § 411.l(b)(l) (stating that "[t]his subpart identifies: (1) The particular types of services that are excluded" from coverage); see also 42 C.F.R. Subpart 411 (titled "Exclusions from Medicare and Limitations on Medicare Payment").

### *Medicaid*

77.     Under Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.*, federal money is distributed to the states, which in turn provide certain medical services to the poor. Federal Medicaid regulations require each state to designate a single state agency responsible for the Medicaid program. The agency must create and implement a "plan for medical assistance" that is consistent with Title XIX and with the regulations of the Secretary of HHS ("the Secretary").

78.     After the Secretary approves the plan submitted by the state, the state is entitled each quarter to be reimbursed for a percentage of its expenditures made in providing specific types of "medical assistance" under the plan. 42 U.S.C. § 1396b(a)(l). Individuals may be "dual eligible" for both the Medicare program (as the primary insurer) and the Medicaid program (as the secondary insurer).

### *Medi-Cal*

79.     California's Medi-Cal program ("Medi-Cal") is a crucial safety net for Californians unable to afford health care. Medi-Cal is a program that offers free or low-cost health coverage for children and adults with limited income and resources. Intended to provide essential care for California's growing indigent population, Medi-Cal funds are stretched to their limit. Too many times, MediCal has been subject to fraud and abuse by unscrupulous providers who have put profits above the public good. Funds that have been designated for essential services to the neediest among Californians have been diverted away because of false billing schemes. Those

*COMPLAINT FOR VIOLATION OF FEDERAL AND STATE FALSE CLAIMS ACT, AND FOR UNLAWFUL RETALIATION AND DISCRIMINATION*

fraudulent schemes have threatened to diminish the quality of care, unnecessarily burdened taxpayers, and degraded the medical profession.

### COUNT I

### Violations of the False Claims Act

### 31 U.S.C. § 3729(a)(1)-(a)(2)

### (Against All Defendants)

80.    Relator-Plaintiff incorporates by reference and re-alleges all above paragraphs as if fully set forth herein.

81.    This Count is brought by Relator-Plaintiff in the name of the United States against Defendants under the qui tam provisions of 31 U.S.C. § 3730 for Defendants' violation of 31 U.S.C. §§ 3729(a)(l) and (a)(2).

82.    Defendants knowingly and with reckless disregard for the truth presented or caused to be presented materially false claims to Medicare and Medi-Cal for health care provided at Bakersfield Memorial and through CSV.

83.    Plaintiff United States, unaware of the falsity of the claims and/or statements which defendants caused health care providers to make to the United States, and in reliance on the accuracy thereof, paid those health care providers for claims that would otherwise not have been allowed.

84.    The amounts of the false or fraudulent claims to the United States were material.

85.    The United States, California, and the Medicare and Medi-Cal programs have been damaged by the payment of false or fraudulent claims.

*COMPLAINT FOR VIOLATION OF FEDERAL AND STATE FALSE CLAIMS ACT, AND FOR UNLAWFUL RETALIATION AND DISCRIMINATION*

## COUNT II

### Violations of the California False Claims Act

### California Government Code Section 12650 *et seq.*

### (Against All Defendants)

86.    Relator-Plaintiff incorporates by reference and re-alleges all above paragraphs as if fully set forth herein.

87.    Defendants, and each of them, knowingly (as defined in California Government Code Section 12650, subdivision (b)(2)) presented or caused to be presented false claims for payment or approval to an officer or employee of California.

88.    Each Defendant knowingly made, used, and/or caused to be made and used false records and statements, including but not limited to bills, invoices, requests for reimbursement, and records of services, in order to obtain payment or approval of charges to the Medi-Cal program to which they were not entitled.

89.    Each Defendant knowingly made, used, and/or caused to be made and used false records and statements, including but not limited to bills, invoices, requests for reimbursement, and records of services, in order to obtain payment or approval of charges to the Medi-Cal program to which they were not entitled.

90.    The conduct of Defendants, and each of them, violated Government Code Section 12651, subdivision (a)(l) and was a substantial factor in causing California to sustain damages in an amount according to proof pursuant to California Government Code Section 12651, subdivision (a).

91.    The amounts of the false or fraudulent claims to the State of California were material.

*COMPLAINT FOR VIOLATION OF FEDERAL AND STATE FALSE CLAIMS ACT, AND FOR UNLAWFUL RETALIATION AND DISCRIMINATION*

1

2

3

4

### COUNT III

**Whistleblower Retaliation in Violation of the False Claims Act**

**31 U.S.C. § 3730(h)**

**(Relator-Plaintiff Lopez Against the CSV Defendants)**

5

6

92.     Relator-Plaintiff incorporates by reference and re-alleges all above paragraphs as if fully set forth herein.

7

8

9

10

11

12

93.     At all material times 42 U.S.C. § 1320a-7b(b) was in effect and binding on CSV. This statute prohibits employers such as CSV Defendants from discharging, constructively discharging, demoting, threatening, harassing or in any manner discriminating or retaliating against any employee because he or she provided information, caused information to be provided, or assisted in an investigation by a federal regulatory or law enforcement agency.

13

14

15

16

94.     The False Claims Act ("FCA"), 31 U.S.C. § 3730(h), prohibits an employer from retaliating against an employee who engages in protected conduct by taking lawful actions in furtherance of an FCA or by making efforts to stop one or more violations of the FCA.

17

95.     Lopez had an employer-employee relationship with CSV Defendants.

18

19

20

21

22

96.     CSV, Dr. Meade, and Dr. Ayala-Rodriguez (the "CSV Defendants") retaliated against Lopez by taking adverse employment actions against him and terminating him after he made oral and written complaints regarding what he reasonably believed to be illegal or unlawful conduct in violation of state and federal statutes, rules and regulations.

23

24

25

26

27

28

97.     The CSV Defendants knew that Plaintiff was engaging in a protected activity by making complaints regarding the illegal conduct of CSV Defendants, Bakersfield Memorial, and its operator Dignity Health (and/or conduct Dr. Lopez reasonably believed to be illegal) and because of these actions Plaintiff was discharged from his employment and/or otherwise discriminated and retaliated against by CSV Defendants.

98.    CSV Defendants' conduct was a substantial factor in causing Plaintiff's harm, which includes, without limitation, past and future lost earnings; past and future lost benefits; emotional distress; mental suffering; reputational damage; and other pecuniary loss.

99.    CSV Defendants' actions constituted a willful violation of the abovementioned federal laws and regulations. As a direct result, Plaintiff has suffered and continues to suffer substantial losses related to the loss of wages and is entitled to recover costs and expenses and attorney's fees, in amounts according to proof at time of trial.

100.    CSV Defendants committed the outrageous acts alleged hereinabove by acting knowingly and willfully, with the wrongful and illegal deliberate intention of injuring Lopez, from improper motives amounting to malice, fraud and oppression and in conscious disregard of his rights. Lopez is thus entitled to recover punitive and exemplary damages in amounts according to proof at the time of trial, to the full extent allowable by law, in addition to any other remedies and damages allowable by law.

## COUNT IV

**Whistleblower Retaliation in Violation of the California False Claims Act**
**California Government Code Section 12653(A)**
**(Relator-Plaintiff Lopez Against the CSV Defendants)**

101.    Relator-Plaintiff incorporates by reference and re-alleges all above paragraphs as if fully set forth herein.

102.    Government Code Section 12653(a) provides that "[a]ny employee [. . .] shall be entitled to all relief necessary to make that employee [. . .] whole, if that employee [. . .] is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of his or her employment because of lawful acts done by the employee [. . .] in furtherance of an action under" the California False Claims Act.

*COMPLAINT FOR VIOLATION OF FEDERAL AND STATE FALSE CLAIMS ACT,*
*AND FOR UNLAWFUL RETALIATION AND DISCRIMINATION*

103.    Lopez had an employer-employee relationship with CSV Defendants.

104.    Lopez reasonably believed (and continues to believe) that false or fraudulent claims have been submitted to Medi-Cal, Medicare, Medicaid, and other government entities for in amounts to which the defendants were not entitled, and that defendants sought payment or reimbursement from the State of California and/or the United States of America for all or a portion of the funds used to pay such claims, all thereby having defrauded the government of money, property, and/or services through the submission of false or fraudulent claims for payment or approval.

105.    Lopez had reasonable cause to believe, and did believe, that the information she was reporting were violations of state or federal statutes, or violations of or noncompliance with local, state, or federal rules or regulations. Lopez engaged in protected activity by reporting this information to CSV Defendants.

106.    Lopez is informed and believes, and thereon alleges that CSV Defendants knew that Plaintiff was engaging in a protected activity, by his making complaints regarding CSV Defendants' illegal conduct and/or conduct Lopez reasonably believed to be illegal, and because of these actions she was discharged from his employment and/or otherwise discriminated and retaliated against by Defendants.

107.    Lopez acts in furtherance of a false claims action and/or to stop the submission and payment of false claims were a substantial motivating factor for CSV Defendants' decision, made through its employees and agents, to terminate Relator-Plaintiff.

108.    CSV Defendants' conduct was a substantial factor in causing Lopez harm, which includes, without limitation: past and future lost earnings; past and future lost benefits; emotional distress; mental suffering; reputational damage; and other pecuniary loss.

109.    Relator-Plaintiff is also entitled to reinstatement, double back pay, interest on the double back pay, and other special damages pursuant to California Government Code Section 12653(b).

*COMPLAINT FOR VIOLATION OF FEDERAL AND STATE FALSE CLAIMS ACT, AND FOR UNLAWFUL RETALIATION AND DISCRIMINATION*

110.    Defendants committed the outrageous acts alleged hereinabove by acting knowingly and willfully, with the wrongful and illegal deliberate intention of injuring Plaintiff, from improper motives amounting to malice, fraud and suppression and in conscious disregard of Plaintiff's rights. Accordingly, in addition to the damages provided above, Plaintiff also seeks punitive damages for CSV Defendants' acts pursuant to California Government Code Section 12653(b).

111.    Relator-Plaintiff also seeks reasonable attorneys' fees and costs of litigation incurred in bringing this action pursuant to California Government Code Section 12653(b).

## COUNT V

### Retaliation in Violation of California Labor Code Section 1102.5
### (Relator-Plaintiff Lopez Against the CSV Defendants)

112.    Relator-Plaintiff incorporates by reference and re-alleges all above paragraphs as if fully set forth herein.

113.    California Labor Code Section 1102.5 provides, in part, that "[a]n employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information [. . .] to a government or law enforcement agency, to a person with authority over the employee [. . .] who has the authority to investigate, discover, or correct the violation or noncompliance [. . .] if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties."

114.    Relator-Plaintiff had an employer-employee relationship with CSV Defendants.

115.    CSV Defendants had authority over Lopez in that they were empowered to terminate Plaintiff's employment and/or discipline him.

*COMPLAINT FOR VIOLATION OF FEDERAL AND STATE FALSE CLAIMS ACT, AND FOR UNLAWFUL RETALIATION AND DISCRIMINATION*

1

2

116.   Lopez had a reasonable belief that Defendants were violating state and federal laws, and reported those violations to CSV Defendants, as alleged hereinabove.

3

4

5

6

117.   Lopez engaged in protected activity when she reported reasonable suspicions of violations of state and/or federal statutes, rules, and/or regulations to CSV Defendants, who had authority over him and had authority to investigate, discover, or correct the violations or noncompliance alleged above.

7

8

9

118.   CSV Defendants retaliated against Lopez for his whistleblowing, by taking adverse employment action against him and terminating his employment, among other things, all in violation of Labor Code Section 1102.5

10

11

119.   Lopez disclosure of information was a significant factor in CSV Defendants' decision to discharge Lopez.

12

13

120.   As a direct and proximate result of such retaliation, Lopez has been damaged.

14

15

16

17

121.   CSV Defendants' conduct was a substantial factor in causing Lopez harm, which includes, without limitation, past and future lost earnings; past and future lost benefits; emotional distress; mental suffering; reputational damage; and other pecuniary loss.

18

19

20

21

22

122.   Pursuant to California Code of Civil Procedure Section 1021.5, which provides that a "court may award attorney's fees to a successful party against one or more opposing party in any action which has resulted in the enforcement of an important right affecting the public interest," Lopez seeks reasonable attorneys' fees and costs incurred in bringing this claim.

23

24

**COUNT VI**

25

**Retaliation in Violation of California Labor Code Section 98.6**

26

**(Relator-Plaintiff Lopez Against the CSV Defendants)**

27

28

123.   Relator-Plaintiff incorporates by reference and re-alleges all above paragraphs as if fully set forth herein.

25

*COMPLAINT FOR VIOLATION OF FEDERAL AND STATE FALSE CLAIMS ACT, AND FOR UNLAWFUL RETALIATION AND DISCRIMINATION*

124.   California Labor Code Section 98.6 provides that an employer may not "discharge an employee or in any manner discriminate, retaliate, or take any adverse action against any employee [. . .] because of the exercise by the employee [. . .] on behalf of himself, herself, or others of any rights afforded him or her." Courts have determined that a plaintiff may assert a claim under Section 98.6 for adverse action taken because of an employee's exercise of rights afforded to him or her by other provisions of the Labor Code, such as Section 1102.5. See Grinzi v. San Diego Hospice Corp., 120 Cal. App. 4th 72, 87 (2004); Couch v. Morgan Stanley & Co., Inc., No. 14-cv-10, 2015 WL 4716297, at *17 (E.D. Cal. Aug. 7, 2015).

125.   Relator-Plaintiff had an employer-employee relationship with CSV Defendants.

126.   CSV Defendants took adverse employment action against Lopez by terminating his employment.

127.   CSV Defendants' decision to terminate Lopez employment resulted from Lopez exercise of his rights under Labor Code Section 1102.5.

128.   Labor Code Section 1102.5, in part, affords Relator-Plaintiff the right to be free from retaliation by his employer and/or any person acting on behalf of his employer, for disclosing information to an employer with authority to investigate, discover, or correct the violation, so long as Relator-Plaintiff reasonably believed that the information disclosed was a violation of state or federal statutes.

129.   By reason of the foregoing, Lopez has been harmed.

130.   CSV Defendants' conduct was a substantial factor in causing Lopez harm, which includes, without limitation, past and future lost earnings; past and future lost benefits; emotional distress; mental suffering; reputational damage; and other pecuniary loss.

131.   In addition to the remedies requested above, for each violation of California Labor Code Section 98.6 by CSV Defendants, Relator-Plaintiff seeks civil penalties of $10,000 pursuant to California Labor Code Section 98.6(b)(3).

*COMPLAINT FOR VIOLATION OF FEDERAL AND STATE FALSE CLAIMS ACT, AND FOR UNLAWFUL RETALIATION AND DISCRIMINATION*

132. Relator-Plaintiff is also entitled to reinstatement and reimbursement for lost wages and benefits pursuant to California Labor Code Section 98.6(b)(1).

133. Pursuant to California Code of Civil Procedure Section 1021.5, which provides that a "court may award attorney's fees to a successful party against one or more opposing party in any action which has resulted in the enforcement of an important right affecting the public interest," Relator-Plaintiff seeks reasonable attorneys' fee and costs incurred in bringing this claim.

## COUNT VII

### Retaliatory Discharge/Harassment in Violation of EMTALA

### 42 U.S.C. § 1395dd(i)

### (Relator-Plaintiff Lopez Against the CSV Defendants)

134. Dr. Lopez incorporates by reference all allegations of this Complaint.

135. As a direct response to Dr. Lopez' investigation and reporting of errors, omissions, shortcomings, and fraudulent activities as stated herein, CSV Defendants took adverse employment action against Dr. Lopez for the purpose of punishing him and discouraging him from investigating and asserting EMTALA violations, and/or what he reasonably believed to be EMTALA violations.

136. At all times described herein, CSV Defendants was aware that Dr. Lopez was engaged in the investigation of EMTALA violations, as detailed above.

137. Upon information and belief, CSV Defendants fraudulently billed the Government for some or all of the above described worthless and/or unnecessary services.

138. As a direct and proximate result of the acts of CSV Defendants as described herein, Dr. Lopez was terminated and harmed. Therefore, Dr. Lopez is entitled to all relief under the EMTALA Retaliatory Harassment and Discharge Provisions, 42 U.S.C. § 1395dd(I).

*COMPLAINT FOR VIOLATION OF FEDERAL AND STATE FALSE CLAIMS ACT, AND FOR UNLAWFUL RETALIATION AND DISCRIMINATION*

# COUNT VIII

## Retaliation in Violation of The Fair Employment and Housing Act

### (Relator-Plaintiff Lopez Against the CSV Defendants)

139.   Plaintiff incorporates by reference all of the preceding paragraphs as if set forth fully herein.

140.   CSV Defendants regularly employ more than five employees, and are subject to suit under FEHA for conduct prohibited thereby.

141.   It is unlawful for an employer or covered entity to retaliate or otherwise discriminate against a person for requesting an accommodation, regardless of whether the request was granted. Govt. Code § 12940(l)(4).

142.   Plaintiff engaged in activity protected by FEHA by requesting reasonable accommodations in the form of backup. Plaintiff also engaged in protected activity by requesting and/or taking medical or disability leave for his own serious medical condition. Additionally, Plaintiff engaged in protected activity by bringing to management's attention CSV Defendants' practices that were compromising patient safety.

143.   CSV Defendants subjected Plaintiff to adverse employment actions, including but not limited to, threatening to transfer him to a different clinic, subjecting him to disparate treatment, taking away his surgery privileges, cutting his pay, and/or terminating his employment.

144.   Plaintiff's exercise of protected activities was a substantial motivating reason for CSV Defendants' adverse employment actions.

145.   Plaintiff was harmed.

146.   The retaliatory conduct of CSV Defendants was a substantial factor in causing Plaintiff's harm.

147.   As a proximate result of the acts of CSV Defendants, Plaintiff has suffered damages in an amount according to proof.

148.   As a direct and further proximate result of the above violations of his

rights under FEHA, Plaintiff has suffered damages as set forth above. Plaintiff is entitled to economic and non-economic damages, equitable relief, attorneys' fees, and costs, including expert witness fees.

149.  CSV Defendants engaged in wrongful conduct with malice, oppression, or fraud. The conduct constituting malice, oppression, or fraud was committed by one or more officers, directors, or managing agents of CSV Defendants who acted on behalf of CSV Defendants; authorized by one or more officers, directors, or managing agents of Defendant; or adopted or approved after it occurred by one or more officers, directors, or managing agents of Defendant.

150.  By engaging in the aforementioned acts and/or in authorizing and/or ratifying such acts, CSV Defendants engaged in willful, malicious, intentional, oppressive, fraudulent and/or despicable conduct, and acted in willful and conscious disregard of the rights and/or welfare of Plaintiff thereby justifying the award of punitive and exemplary damages in an amount according to proof at the time of trial.

## **COUNT IX**

### **Discrimination in Violation of The Fair Employment and Housing Act**
### **(Relator-Plaintiff Lopez Against the CSV Defendants)**

151.  Plaintiff incorporates by reference all of the preceding paragraphs as if set forth fully herein.

152.  CSV Defendants regularly employ more than five employees, and are subject to suit under the Fair Employment and Housing Act ("FEHA") for conduct prohibited thereby.

153.  Plaintiff was an employee of CSV Defendants.

154.  Plaintiff had a physical condition or disability that limited his ability to work.

155.  CSV Defendants subjected Plaintiff to certain adverse employment actions, including but not limited to threatening to transfer him to a different clinic,

*COMPLAINT FOR VIOLATION OF FEDERAL AND STATE FALSE CLAIMS ACT,*
*AND FOR UNLAWFUL RETALIATION AND DISCRIMINATION*

1  subjecting him to disparate treatment, taking away his surgery privileges, cutting his

2  pay, and/or terminating his employment (collectively, "adverse actions").

3      156.   Plaintiff is informed and believes and thereon alleges that such adverse

4  actions were substantially motivated by his age, actual or perceived disability or

5  medical condition, the fact that he had taken or requested protected medical or

6  disability leave for his own serious health condition, the fact that he had requested

7  reasonable accommodations, and/or the fact that he pointed out to management

8  practices that were endangering patients.

9      157.   The conduct of CSV Defendants was a substantial factor in causing harm

10 to Plaintiff.

11     158.   As a proximate result of the acts of CSV Defendants, Plaintiff has suffered

12 damages in an amount according to proof. Plaintiff is entitled to economic and non-

13 economic damages, equitable relief, attorneys' fees, and costs, including expert

14 witness fees.

15     159.   CSV Defendants engaged in wrongful conduct with malice, oppression,

16 or fraud. The conduct constituting malice, oppression, or fraud was committed by one

17 or more officers, directors, or managing agents of CSV Defendants who acted on

18 behalf of CSV Defendants; authorized by one or more officers, directors, or managing

19 agents of Defendant; or adopted or approved after it occurred by one or more officers,

20 directors, or managing agents of Defendant.

21     160.   By engaging in the aforementioned acts and/or in authorizing and/or

22 ratifying such acts, CSV Defendants engaged in willful, malicious, intentional,

23 oppressive, fraudulent and/or despicable conduct, and acted in willful and conscious

24 disregard of the rights and/or welfare of Plaintiff thereby justifying the award of

25 punitive and exemplary damages in an amount according to proof at the time of trial.

26

27

28

*COMPLAINT FOR VIOLATION OF FEDERAL AND STATE FALSE CLAIMS ACT,*
*AND FOR UNLAWFUL RETALIATION AND DISCRIMINATION*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COUNT X

### Failure To Make Reasonable Accommodations in Violation of

### The Fair Employment and Housing Act

### (Relator-Plaintiff Lopez Against the CSV Defendants)

161.   Plaintiff incorporates by reference all of the preceding paragraphs as if set forth fully herein.

162.   California Government Code section 12940(m) provides that it is unlawful for any employer or any other covered entity to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee.

163.   CSV Defendants are employers within the meaning of FEHA. CSV Defendants regularly employ more than five employees, and are subject to suit under FEHA for conduct prohibited thereby.

164.   Plaintiff was an employee of CSV Defendants.

165.   At all times material to this complaint, Plaintiff was a person with a perceived or actual disability within the meaning of FEHA, California Government Code §§ 12940 and 12926.

166.   Plaintiff had an actual or perceived physical condition or disability that limited his ability to work.

167.   CSV Defendants knew of Plaintiff's physical condition or disability that limited his ability to work; perceived that Plaintiff had a such physical condition or disability; and/or treated Plaintiff as if he had such physical condition or disability.

168.   Plaintiff was able to perform the essential duties of his job with or without reasonable accommodation for his physical condition or disability.

169. CSV Defendants failed to provide reasonable accommodation for Plaintiff's physical condition or disability. Instead of providing such reasonable accommodation, CSV Defendants terminated Plaintiff.

*COMPLAINT FOR VIOLATION OF FEDERAL AND STATE FALSE CLAIMS ACT, AND FOR UNLAWFUL RETALIATION AND DISCRIMINATION*

170.   By failing to provide reasonable accommodations for Plaintiff's actual or perceived disability, CSV Defendants have violated Plaintiff's rights under FEHA.

171.   Plaintiff was harmed.

172.   CSV Defendants' failure to provide reasonable accommodation was a substantial factor in causing Plaintiff's harm.

173.   As a proximate result of the acts of CSV Defendants and the violations of Plaintiff's rights under FEHA, Plaintiff has suffered damages in an amount according to proof. Plaintiff is entitled to economic and non-economic damages, equitable relief, attorneys' fees, and costs, including expert witness fees.

174.   CSV Defendants engaged in wrongful conduct with malice, oppression, or fraud. The conduct constituting malice, oppression, or fraud was committed by one or more officers, directors, or managing agents of CSV Defendants who acted on behalf of CSV Defendants; authorized by one or more officers, directors, or managing agents of Defendant; or adopted or approved after it occurred by one or more officers, directors, or managing agents of Defendant.

175.   By engaging in the aforementioned acts and/or in authorizing and/or ratifying such acts, CSV Defendants engaged in willful, malicious, intentional, oppressive, fraudulent and/or despicable conduct, and acted in willful and conscious disregard of the rights and/or welfare of Plaintiff thereby justifying the award of punitive and exemplary damages in an amount according to proof at the time of trial.

## **COUNT XI**

**Failure To Engage in The Interactive Process in Violation of**

**The Fair Employment and Housing Act**

**(Relator-Plaintiff Lopez Against the CSV Defendants)**

176.   Plaintiff incorporates by reference all of the preceding paragraphs as if set forth fully herein.

177.   California Government Code section 12940(n) provides that it is unlawful for any employer or covered entity to fail to engage in a timely, good faith, interactive process with the employee to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee with a known physical disability or known medical condition.

178.   Once initiated, the employer has a continuous obligation to engage in the interactive process in good faith (Swanson v. Morongo Unified School Dist. (2014) 232 Cal.App.4th 954, 971–972).

179.   At all times material to this complaint, Plaintiff has been a person with a disability within the meaning of FEHA, California Government Code §§12940 and 12926.

180.   CSV Defendants are employers within the meaning of FEHA.

181.   At all times relevant hereto, CSV Defendants were aware of Plaintiff's physical disability.

182.   On one or more occasions, Plaintiff requested reasonable accommodations for his physical disability.

183.   Plaintiff was willing at all relevant times to participate in an interactive process with CSV Defendants to determine whether reasonable accommodations could be made so he would be able to perform the essential requirements of his job.

184.   CSV Defendants failed to meet the obligation to engage in a timely, good faith, interactive process with Plaintiff to determine whether reasonable accommodations could be made.

185.   CSV Defendants could have made a reasonable accommodation when the interactive process should have taken place, instead of terminating Plaintiff.

186.   In committing these actions, CSV Defendants violated FEHA.

187.   The failure of CSV Defendants to engage in a good-faith interactive process was a substantial factor in causing harm to Plaintiff.

188.   As a proximate result of the acts of CSV Defendants and the violations of

*COMPLAINT FOR VIOLATION OF FEDERAL AND STATE FALSE CLAIMS ACT, AND FOR UNLAWFUL RETALIATION AND DISCRIMINATION*

Plaintiff's rights under FEHA, Plaintiff has suffered economic and non-economic damages in an amount according to proof. Plaintiff is entitled to economic and non-economic damages, equitable relief, attorneys' fees, and costs, including expert witness fees.

189.   CSV Defendants engaged in wrongful conduct with malice, oppression, or fraud. The conduct constituting malice, oppression, or fraud was committed by one or more officers, directors, or managing agents of CSV Defendants who acted on behalf of CSV Defendants; authorized by one or more officers, directors, or managing agents of Defendant; or adopted or approved after it occurred by one or more officers, directors, or managing agents of Defendant.

190.   By engaging in the aforementioned acts and/or in authorizing and/or ratifying such acts, CSV Defendants engaged in willful, malicious, intentional, oppressive, fraudulent and/or despicable conduct, and acted in willful and conscious disregard of the rights and/or welfare of Plaintiff thereby justifying the award of punitive and exemplary damages in an amount according to proof at the time of trial.

## COUNT XII

### Failure To Prevent Discrimination or Retaliation

### (Relator-Plaintiff Lopez Against the CSV Defendants)

191.   Plaintiff incorporates by reference all of the preceding paragraphs as if set forth fully herein.

192.   Plaintiff was an employee of CSV Defendants.

193.   Plaintiff was subjected to discrimination and retaliation in the course of employment.

194.   CSV Defendants failed to take all reasonable steps to prevent such discrimination or retaliation.

195.   Plaintiff was harmed.

196.   CSV Defendants' failure to take all reasonable steps to prevent discrimination or retaliation was a substantial factor in causing Plaintiff's harm.

197.   As a proximate result of the acts of CSV Defendants and the violations of Plaintiff's rights under FEHA, Plaintiff has suffered economic and non-economic damages in an amount according to proof. Plaintiff is entitled to economic and non-economic damages, equitable relief, attorneys' fees, and costs, including expert witness fees.

198.   CSV Defendants engaged in wrongful conduct with malice, oppression, or fraud. The conduct constituting malice, oppression, or fraud was committed by one or more officers, directors, or managing agents of CSV Defendants who acted on behalf of CSV Defendants; authorized by one or more officers, directors, or managing agents of Defendant; or adopted or approved after it occurred by one or more officers, directors, or managing agents of Defendant.

199.   By engaging in the aforementioned acts and/or in authorizing and/or ratifying such acts, CSV Defendants engaged in willful, malicious, intentional, oppressive, fraudulent and/or despicable conduct, and acted in willful and conscious disregard of the rights and/or welfare of Plaintiff thereby justifying the award of punitive and exemplary damages in an amount according to proof at the time of trial.

## COUNT XIII

### Violation of The California Family Rights Act

### (Relator-Plaintiff Lopez Against the CSV Defendants)

200.   Plaintiff incorporates all of the preceding paragraphs as if set forth fully herein.

201.   Plaintiff is a member of the class of persons entitled to protected medical and/or family leave under the California Family Rights Act ("CFRA"), embodied in Government Code section 12945.2. Specifically, Plaintiff worked for more than one

*COMPLAINT FOR VIOLATION OF FEDERAL AND STATE FALSE CLAIMS ACT, AND FOR UNLAWFUL RETALIATION AND DISCRIMINATION*

1  year for CSV Defendants and worked in excess of 1,250 hours in the preceding 12-

2  month period prior to his leave or request for leave.

3      202.  Plaintiff requested medical leave for a qualifying purpose --- for

4  Plaintiff's own serious health condition.

5      203.  Plaintiff provided reasonable notice to CSV Defendants of his need to

6  take medical leave.

7      204.  Each Defendant is an employer covered by and subject to CFRA, as each

8  Defendant employed 50 or more full or part time employees for each working day of

9  each of the 20 calendar weeks preceding the relevant leave period.

10     205.  CSV Defendants had a legal duty to not interfere with Plaintiff's rights

11 under CFRA and to refrain from retaliating against Plaintiff for requesting medical

12 leave for his own serious health condition.

13     206.  Upon information and belief, CSV Defendants violated CFRA by

14 retaliating against Plaintiff for requesting and/or taking medical leave for his own

15 serious health condition (e.g., by among other things, threatening to transfer him to a

16 different clinic, subjecting him to disparate treatment, taking away his surgery

17 privileges, cutting his pay, and/or terminating his employment).

18     207.  CSV Defendants' violation of CFRA was a substantial factor in causing

19 Plaintiff to suffer harm. As a proximate and direct result of CSV Defendants' violation

20 of CFRA, Plaintiff suffered loss, injury and damage in an amount to be determined

21 according to proof at trial.

22     208.  As a proximate and direct result of CSV Defendants' violation of CFRA,

23 Plaintiff has lost and will continue to lose income and benefits in an amount to be

24 proven at the time of trial. Plaintiff claims such amount as damages together with

25 prejudgment interest pursuant to Civil Code section 3287 and/or any other provision

26 of law providing for prejudgment interest.

27

28

*COMPLAINT FOR VIOLATION OF FEDERAL AND STATE FALSE CLAIMS ACT,*
*AND FOR UNLAWFUL RETALIATION AND DISCRIMINATION*

209.   As a result of the aforesaid acts of CSV Defendants, Plaintiff claims general damages for mental and emotional distress and aggravation in an amount to be proven at the time of trial.

210.   The above-described acts of CSV Defendants, by and through their managing agents, employees, officers or directors, were engaged in with a deliberate, cold, callous, fraudulent and intentional manner in order to injure and damage Plaintiff and/or with a conscious disregard of Plaintiff and his rights. Such acts constitute malice, fraud and/or oppression within the meaning of Civil Code section 3294. CSV Defendants' violation of Plaintiff's CFRA rights was wanton, willful, intentional, malicious, oppressive, fraudulent and betrayed a reckless disregard for Plaintiff's rights, thus entitling Plaintiff to an award of punitive damages.

211.   Plaintiff is also entitled to recover reasonable attorney's fees and costs, including expert witness fees, in connection with this cause of action under Civ. Code § 1021.5, and Government Code §12965.

## COUNT XIV

### Wrongful Termination in Violation of Public Policy

### (Relator-Plaintiff Lopez Against the CSV Defendants)

212.   Plaintiff incorporates all the preceding paragraphs as if set forth fully herein.

### *Public Policy Related to Whistleblowing*

213.   There exists a public policy in the State of California, codified in Labor Code § 1102.5 and other applicable law, which prohibits employers from (i) implementing policies preventing employees from disclosing reasonably based suspicions of violations of state or federal statutes or regulations; (ii) retaliating against employees who have disclosed reasonably based suspicions of a violation of state or federal statute or regulation to management; and (iii) retaliating against employees who refuse to participate in activities that would result in a violation of state or federal

statute or regulation. This public policy of the State of California is designed to protect all employees and to promote the welfare and well-being of the public at large, and is fundamental, substantial, and well established.

214.  Additionally, there exists a public policy in the State of California, codified in Health and Safety Code § 1278.5 prohibiting any health care facility from discriminating or retaliating against any employee, member of the medical staff, or other health care worker of the health facility because the person has presented a grievance, complaint, or report to the facility, or the medical staff of the facility regarding suspected unsafe patient care and conditions.

215.  Plaintiff brought to the attention of CSV Defendants actions, conduct, and/or practices of CSV Defendants which Plaintiff reasonably believed to be in violation of state or federal law, statute, or regulation, and which Plaintiff believed posed a danger to patients.

216.  CSV Defendants retaliated against Plaintiff for doing so by, among other things, threatening to transfer him to a different clinic, subjecting him to disparate treatment, taking away his surgery privileges, cutting his pay, and/or terminating his employment in violation of the public policy codified in Labor Code § 1102.5 and/or Health and Safety Code § 1278.5.

### *Public Policy Related to Discrimination*

217.  There exists a public policy in the State of California, codified in the Fair Employment and Housing Act, Government Code §§ 12940(a) and 12940(h), and the accompanying regulations, prohibiting discrimination in employment on the basis of an employee's accent, national origin, age, and/or opposition to unlawful and discriminatory practices forbidden by FEHA.

218.  This public policy of the State of California is designed to protect all employees and to promote the welfare and well-being of the public at large, and is fundamental, substantial, and well established.

219.   CSV Defendants violated public policy by, among other things, threatening to transfer Plaintiff to a different clinic, subjecting him to disparate treatment, taking away his surgery privileges, cutting his pay, and/or terminating his employment, for requesting reasonable accommodations, requesting and/or taking protected medical leave, and/or for bringing to management's attention practices that posed a danger to patient safety.

220.   The adverse employment actions CSV Defendants took against Plaintiff were in violation of the public policies alleged above or at least one of them.

221.   CSV Defendants' violation of one or more of the public policies alleged above was a substantial motivating reason for CSV Defendants' decision to among other things, threaten to transfer Plaintiff to a different clinic, subject him to disparate treatment, take away his surgery privileges, cut his pay, and/or terminate his employment.

222.   As a direct and proximate result of CSV Defendants' conduct, Plaintiff has suffered economic and non-economic damages, including, but not limited to, back pay, front pay, mental anguish and emotional suffering, all in an amount to be proven at trial and in excess of the jurisdictional minimum of this court.

223.   CSV Defendants engaged in wrongful conduct with malice, oppression, or fraud. The conduct constituting malice, oppression, or fraud was committed by one or more officers, directors, or managing agents of CSV Defendants who acted on behalf of CSV Defendants; authorized by one or more officers, directors, or managing agents of CSV Defendants; or adopted or approved after it occurred by one or more officers, directors, or managing agents of CSV Defendants.

224.   By engaging in the aforementioned acts and/or in authorizing and/or ratifying such acts, CSV Defendants engaged in willful, malicious, intentional, oppressive, fraudulent and/or despicable conduct, and acted in willful and conscious disregard of the rights and/or welfare of Plaintiff thereby justifying the award of punitive and exemplary damages in an amount according to proof at trial.

*COMPLAINT FOR VIOLATION OF FEDERAL AND STATE FALSE CLAIMS ACT, AND FOR UNLAWFUL RETALIATION AND DISCRIMINATION*

## PRAYER FOR RELIEF

WHEREFORE, Relator-Plaintiff, acting on behalf and in the name of the United States of America and the State of California, demands and prays that judgment be entered against all Defendants under the federal, False Claims Act, and California False Claims Act as follows:

## COUNT I

(1)    That Defendants cease and desist from violating 31 U.S.C. § 3729, *et seq.*, as set forth above;

(2)    Judgment against Defendants for three times the amount of damages the United States has sustained because of their actions, plus a civil penalty of $11,000 for each violation of the federal False Claims Act;

(3)    That Relator-Plaintiff be awarded 25% of the proceeds of this actions if the United States elects to intervene and 30% if it does not;

(4)    That Relator-Plaintiff be awarded all of his attorneys' fees, litigation and investigation costs, and expenses; and

(5)    Such other relief as the Court deems just and appropriate.

## COUNT II

(1)    That Defendants cease and desist from violating California Government Code Section 12650, *et seq.,* as set forth above;

(2)    Judgment against the Defendants in an amount equal to up to three times the amount the State of California has sustained because of Defendants' actions, plus a civil penalty of not less than $5,500 and not more than $11,000 for each violation of California Government Code Section 12651(a)(l)-(3);

(3)    That Relator-Plaintiff be awarded the maximum amount allowed pursuant to California Government Code Section 12651(a);

(4)    That Relator-Plaintiff be awarded all of his attorneys' fees, litigation and investigation costs, and expenses; and

*COMPLAINT FOR VIOLATION OF FEDERAL AND STATE FALSE CLAIMS ACT, AND FOR UNLAWFUL RETALIATION AND DISCRIMINATION*

1

2

(5)     Such other relief as the Court deems just and appropriate.

3

4

WHEREFORE, Relator-Plaintiff Lopez requests the following relief against CSV Defendants strictly on behalf of himself:

5

### COUNTS III-XIV

6

7

8

(1)     For reinstatement with the same seniority, status, duties, and working conditions applicable at the time of his termination, and abatement of the retaliatory conduct directed toward him, or alternatively, front pay;

9

10

11

(2)     For economic damages for lost wages and benefits, including double back pay, interest on the double back pay, and compensation for any special damages sustained as a result of the retaliation;

12

13

(3)     For special damages, including, but not limited to, damages for mental and emotional distress and harm to reputation;

14

15

(4)     For a civil penalty of $10,000 per employee for each violation of this section;

16

(5)     For punitive damages;

17

18

(6)     For an award of reasonable attorneys' fees and costs incurred in this action;

19

(7)     For prejudgment interest; and

20

(8)     For such other and further relief as the Court may deem just and proper.

21

22

Dated: December 27, 2024          **UMHOFER, MITCHELL & KING LLP**

23

24

By:    /s/ *Matthew Donald Umhofer*

25

Matthew Donald Umhofer
*Attorneys for Plaintiff Daniel P. Lopez*

26

27

28

*COMPLAINT FOR VIOLATION OF FEDERAL AND STATE FALSE CLAIMS ACT, AND FOR UNLAWFUL RETALIATION AND DISCRIMINATION*